**BROOKE M. BARNETT & ASSOCIATES, P.C.**
Attorney I.D. 046782011
60 Park Place, Suite 606
Newark, New Jersey 07102
T: (973) 693-4444
F: (973) 693-4441
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACKIE ALEXANDER, Administrator ad Prosequendum of the Estate of DAWUD ALEXANDER, decedent,<br><br>Plaintiff,<br><br>vs.<br><br>DETECTIVE MIGUEL HOLGUIN, STATE OF NEW JERSEY, TOWNSHIP OF IRVINGTON, JOHN DOES 1-5 and ABC PUBLIC ENTITIES 1-5 (being fictitious names of unidentified parties),<br><br>Defendants. | CASE NO.:<br><br>**CIVIL ACTION**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

The Plaintiff, Jackie Alexander, Administrator ad Prosequendum of the Estate of Dawud Alexander, decedent, by way of Complaint against Defendants, says:

**JURISDICTIONAL STATEMENT AND PARTIES**

1. This action is brought pursuant to 42 U.S.C. Sections 1983, 1985 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.

2. The Court has jurisdiction of this action under 42 U.S.C. Section 1983, 28 U.S.C. Section 1343, and 28 U.S.C. Section 1331 in that this is an action to redress violations of Plaintiff's

federally protected Constitutional rights.

3. This Court has supplemental jurisdiction of all state claims under 28 U.S.C. Section 1367.

4. Plaintiff, Jackie Alexander ("Plaintiff"), is and was at all times relevant a United States citizen and resident of Essex County, State of New Jersey.

5. Decedent, Dawud Alexander ("Decedent"), was at all times relevant a United States citizen and resident of Essex County, State of New Jersey.

6. Defendant Detective Miguel Holguin ("Holguin") was at all times relevant acting under color of state law as an active and duly appointed New Jersey State Trooper, and in such capacity, as the agent, servant, and employee of Defendant, State of New Jersey.

7. Defendant, Township of Irvington ("City"), is a political subdivision of the State of New Jersey, a New Jersey municipal corporation, and at all times materials hereto, acted through its agents, employees, and servants, Including Defendant Holguin,

8. John Does 1-5, are fictitious names for persons unknown at this time but will be substituted when known as associated, affiliated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties is incorporated as a defendant in each and every count listed below. John Does are supervisors, employees, managers, agents, assigns and heirs of the Township of Irvington, State of New Jersey and/or other individuals unnamed who contributed in any way to the Plaintiff's claim.

9. ABC Public Entities 1-5, are fictitious names for entities unknown at this time but will be substituted when known as associated, affiliated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties is incorporated as a defendant in each

and every count listed below. ABC Public Entities are public entities whose custom, policy or practice contributed to Plaintiff's claims.

10. All defendants are sued in their individual and official capacity.

11. The acts and practices constituting the violations alleged below have all occurred within the Township of Irvington, which is properly within the jurisdiction of the United States District Court in and for the District of New Jersey. Venue in the District of New Jersey, Newark Division, is proper because the incident which is the subject of this lawsuit occurred in Essex County, New Jersey. See 28 U.S.C. Section 1391(b)(1), (b)(2).

12. Plaintiff has complied with the notice requirements of the New Jersey Tort Claims Act and six months has passed since filing said notices.

13. Plaintiff has retained Law Offices of Brooke M. Barnett & Associates, P.C. to represent his interests in prosecuting this action, and said law firm is entitled to its reasonable attorneys' fees and costs incurred in connection therewith.

## STATEMENT OF FACTS

14. At all times material hereto, the subject incident arises out of Defendant Holguin's use of excessive force upon Decedent which occurred on October 3, 2013 in the area of 92 Harrison Place, Irvington, New Jersey.

15. On said date at approximately 6:30 p.m., the Decedent was lawfully positioned on the sidewalk in front 83 Harrison Place, Irvington, New Jersey when numerous New Jersey State Police vehicles converged on said location.

16. At this time, the Decedent ran across the street toward 92 Harrison Place.

17. Despite the Decedent not having committed a crime, several State Police Officers,

including Defendant Holguin, began to chase after him.

18. When the Decedent reached 92 Harrison Place, he discarded a tazor in his possession near the front porch steps located on the right side of said residence.

19. He then continued up sidewalk until turning down an alleyway on the left side of 92 Harrison Place toward the backyard.

20. Once there, the Decedent began to climb over a fence into the backyard of 96 Harrison Place.

21. At this time, Defendant Holguin began firing his service weapon at the Decedent striking him with at least one of the shots.

22. Injured and fearing for his very life, the Decedent managed to reach the fence separating the backyards of 96 Harrison Place and 21 Ellis Avenue.

23. As he attempted to climb said fence, Defendant Holguin continued to fire numerous shots at the Decedent striking him several more times.

24. At no time mentioned herein did the Decedent possess a firearm and/or any other object in his hands or on his person after discarding the tazor well before the officers began to open fire on him.

25. Subsequently, the Decedent was transported to the hospital where he died nearly an hour later.

26. On October 4, 2013, an autopsy was performed on the Decedent revealing four gunshot wounds as well as minor blunt force trauma to the right side of his face.

27. Decedent suffered gunshot wounds to (1) his right medial thigh, (2) left back, at the shoulder, (3) chest and (4) left foot.

28. The autopsy further revealed that:

   i. the trajectory of the bullet which struck his right medial thigh traveled at an upward angle;

   ii. the bullet which struck his left foot entered from the bottom of the foot and traveled at an upward angle; and

   iii. the trajectory of the bullet which struck his chest entered from an angle traveled at a downward.

### Additional Facts Surrounding Liability

29. Irvington Police Department ("IPD") is an administrative subdivision of Defendant City. Defendant City, acting through its Mayor, City Commission and City Manager, is the ultimate policymaking authority for all officially-adopted policies and procedures implemented by employees of IPD, including Defendant officers. Further, it is the entity legally responsible for the hiring, retention, supervision, and training of employees of the IPD, as well as administering any discipline to said employees.

30. On information and belief, Defendant City delegates to the Chief of Police of the IPD the authority to develop, direct, and implement policies for all sworn law enforcement officers, compiled in part in the Irvington Standard Operating Procedures Manual, which set forth purported "guidelines" controlling the interaction between IPD law enforcement officers (including Defendant Officers) and the general public.

31. Defendant City has been placed on notice that there is a pervasive and systemic pattern, custom and practice within IPD to use excessive force by rendering vicious beatings to members of the general public – even those who do not resist arrest, including innocent bystanders and those accused of minor criminal infractions -- and to make great efforts to use

such excessive force outside the view of third-party witnesses, and frequently while the person detained is subdued, restrained, or otherwise still in handcuffs. False police reports are rendered, and charges are pursued against the victims of these unconstitutional beatings but then later are dropped in an effort to intimidate the victims. Finally, the investigations into such allegations of excessive force are almost always a virtual whitewash, as IPD officers are rarely if ever punished for such conduct even when investigations reveal conduct that requires action to be undertaken against the officer(s) involved to prevent such occurrences in the future.

32. Specifically, the notice to the City of the unconstitutional conduct of its officers and employees has occurred through notices of intent to sue, lawsuits, internal affairs investigations, and media reports.

33. Thus, Defendant City is also on notice of the fact a systemic and pervasive pattern and practice of excessive force exists within the IPD and that members of the citizenry are the victims of excessive force committed by police officers of the Defendant City in violation of the Fourth Amendment. Defendant City police officers are allowed and indeed encouraged to commit excessive force with impunity knowing that no discipline, much less meaningful discipline, will follow for acts of excessive force. Such illegal conduct is ratified and condoned by the Defendant City.

34. Defendant Officers are comfortable in the knowledge that any acts of excessive force that he commits will not result in discipline by the Defendant City even when the act of excessive force occurs within IPD. Thus, the lack of discipline for excessive force allowed Defendant Officers to commit excessive force against the Plaintiff because Defendant Officers knew that there would be no official reprisals for his actions against Plaintiff.

## COUNT I – 42 U.S.C. § 1983 – EXCESSIVE FORCE
### (AGAINST DEFENDANT HOLGUIN)

35. Plaintiff, Jackie Alexander, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 34 as if set forth fully herein, and further states as follows:

36. This cause of action is brought by Plaintiff against Defendant Holguin for his use of excessive force under color of law which deprived the Decedent of his constitutionally protected rights under the Fourth Amendment to the United States Constitution.

37. At all times material, Plaintiff had the constitutional right to be free from the use of excessive force against his person and to be free from unlawful searches and seizures.

38. Defendant Holguin, while acting in his capacity as a police officer for the State of New Jersey and under the color of law, did intentionally use excessive force when he shot and killed the Decedent.

39. Force is excessive, and therefore violates the Fourth Amendment, if it is not reasonable in light of the circumstances facing the officer. See Graham v. Connor, 490 U.S. 386, 398 (1989). The facts and circumstances of this show that Defendant Holguin's act of shooting and killing Decedent was clearly unreasonable.

40. At the time of the incident. Defendant Holguin had no reason to believe that the Decedent was armed and dangerous. The Decedent made no verbal threats or violent movements toward Defendant Holguin or any other person.

41. Defendant Holguin did not have a reasonable fear of imminent bodily harm when he shot killed the Decedent nor did Defendant Holguin have a reasonable belief that any other person was in danger of imminent bodily harm from the Decedent. Consequently, shooting and

killing of the Decedent was unwarranted under the circumstances, and was objectively unreasonable when balancing the amount of force used against the need for the force.

42. Therefore, by using subjectively and objectively unreasonable deadly force while acting under the color of state law, Defendant Holguin violated Decedent's rights under the Fourth and Fourteenth Amendments to the United States Constitution and caused his wrongful death.

43. The acts of Defendant as set forth above were intentional, wanton, malicious, reckless and oppressive, thus entitled Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff demands the following relief against Defendants:

a. An award of compensatory damages;

b. An award of punitive damages;

c. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d. An award of such other and further relief the Court deems just and appropriate.

## COUNT II – 42 U.S.C. § 1983 – EXCESSIVE FORCE
## (AGAINST DEFENDANT CITY)

44. Plaintiff, Jackie Alexander, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 43 as if set forth fully herein, and further states as follows:

45. This cause of action is brought by Plaintiff against Defendant City for deprivation by its agents, servants, and employees of constitutional rights within the meaning of 42 U.S.C. § 1983 in violation of the Fourth Amendment to the United States Constitution.

46. Defendant Officers were acting under the color of law, as authorized agents of Defendant City, while unlawfully arresting Plaintiff in the furtherance of their duties.

47. The constitutional deprivation was caused by Defendant City's numerous areas of deliberate indifference.

48. Moreover, at all times material hereto, Defendant City was responsible for implementing the rules and regulations in regard to hiring, retaining, screening, training, supervising, controlling, disciplining and assigning IPD police officers to their duties in the Township of Irvington.

49. Defendant City was deliberately indifferent in that it either expressly or impliedly acknowledged and assented to the failure to hire, retain, screen, train, supervise, control, discipline, and otherwise assign employees of Defendant working as IPD officers for dangerous propensities, lack of training and skill, and other identifiable characteristics making said IPD officers unfit to perform their lawful duties.

50. Defendant City, through its deliberate indifference, failed to ensure that IPD officers, did not violate the constitutional and statutory rights of citizens of the State of New Jersey, including the Decedent, while said IPD officers were acting under color of state law for Defendant City.

51. The deliberate indifference of Defendant City exhibited a reckless, wanton, and callous disregard for the rights of persons, including the Plaintiff, who might be brutally assaulted, injured, battered or otherwise maimed for life by IPD officers who were inadequately trained, supervised, and disciplined.

52. Defendant City was deliberately indifferent in the selection, retaining, training, and supervising of Defendants as IPD officers in that Defendant City: (a) hired and retained Defendants when Defendant City knew, or in the exercise of reasonable care should have known, of the disposition of Defendants to engage in such unlawful conduct including excessive force and the

unlawful conduct complained of herein; (b) failed to remove Defendants from their position of authority as IPD officer despite the fact it knew or should have known of the disposition of Defendants to engage in such unlawful conduct including excessive force and the unlawful conduct complained of herein; (c) failed to take any meaningful disciplinary action against Defendants despite the fact it knew or should have known of the disposition of Defendants to engage in such unlawful conduct including excessive force and the unlawful conduct complained of herein; and (d) failed to protect members of the general public, including the Plaintiff, despite the fact it knew or should have known of the disposition of Defendants to engage in such unlawful conduct including excessive force and the unlawful conduct complained of herein.

53. Additionally, the cited misconduct represents a pattern, custom and practice in which members of the public were savagely beaten, injured, and otherwise endangered by the intentional and reckless misconduct of IPD officers, and that deliberate indifference was widespread as to the use of excessive force, illegal behavior, and widespread incompetence throughout Defendant City including the IPD. This pattern, custom, and practice includes not only the failure to identify and discipline the unlawful and excessive use of force and seizures by IPD personnel, but additionally, the failure to re-train, supervise, or otherwise remove IPD officers who engage in such unlawful conduct as the de facto policy and custom of Defendant City to tolerate, encourage, and even protect such acts by IPD officers.

54. The deliberate indifference of the Defendant City violated the constitutional rights of its citizenry, including the Plaintiff, for which 42 U.S.C. § 1983 provides the appropriate remedies as requested herein.

WHEREFORE, Plaintiff demands the following relief against Defendant City:

a. An award of compensatory damages;

b. An award of punitive damages;

c. An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

d. An award of such other and further relief the Court deems just and appropriate.

### COUNT III– 42 U.S.C. § 1985 – CONSPIRACY
### (AGAINST DEFENDANT OFFICERS)

55. Plaintiff, Jackie Alexander, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 54 as if set forth fully herein, and further states as follows:

56. 42 U.S.C. § 1985 (3) provides a civil cause of action for any person who is injured in his person or property by reason of "two or more persons in any State or Territory conspir[ing] or go[ing] in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws."

57. Upon information and belief, the discovery phase of this litigation will further reveal Defendant Holguin along with other officers conspired to conceal the numerous constitutional violations against the Decedent by tampering with evidence, planting evidence and falsifying reports.

WHEREFORE, Plaintiff demands the following relief against Defendants:

e. An award of compensatory damages;

f. An award of punitive damages;

g.  An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

h.  An award of such other and further relief the Court deems just and appropriate.

### COUNT IV – STATE TORT – WRONGFUL DEATH
### (AGAINST DEFENDANT HOLGUIN)

58.  Plaintiff, Jackie Alexander, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 57 as if set forth fully herein, and further states as follows:

59.  On or about March 11, 2014, Letters of Administration ad Prosequendum were granted by the Surrogate of the County of Essex, New Jersey, to the Plaintiff for the purpose of prosecuting a claim of the next of kin and Dependents of the Decedent, against the Defendants for the death of Dawud Alexander, as hereinafter mentioned.

60.  Decedent leaves him surviving his daughter, Arielle Aliyah Alexander (DOB: 05/17/08), a minor, whom was dependent upon the Decedent and has sustained pecuniary injuries resulting from said death.

61.  This action has been commenced within two years after the death of Dawud Alexander.

62.  As discussed above, on October 3, 2013, Defendant Holguin did commit battery upon the Decedent when he intentionally, recklessly and/or knowingly caused the Decedent to be shot.

63.  As a direct and proximate result of said acts of Defendant Holguin, the Decedent sustained serious injuries including multiple blunt force trauma to his head as well as gunshot wounds to his body and, as a result of said injuries, was caused to die on October 3, 2013, to the pecuniary damage, his next of kin and survivors.

64. At no time was said Defendant privileged to take the action, as lethal force was not necessary under the circumstances.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a. An award of compensatory damages;

b. An award of punitive damages;

c. An award of attorneys' fees and costs; and

d. An award of such other and further relief the Court deems just and appropriate.

## COUNT V – STATE TORT – SURVIVAL STATUTE
## (AGAINST DEFENDANT HOLGUIN)

65. Plaintiff, Jackie Alexander, re-alleges and re-avers each and every allegation set forth in Paragraphs 1 through 64 as if set forth fully herein, and further states as follows:

66. As a result of the intentional acts of the Defendants as set forth above, the Decedent sustained serious injuries including multiple blunt force trauma to his head as well as gunshot wounds to his body and, as a result of said injuries, did suffer prior to his death on October 3, 2013.

WHEREFORE, Plaintiff demands the following relief against Defendant:

a. An award of compensatory damages;

b. An award of punitive damages;

c. An award of attorneys' fees and costs; and

d. An award of such other and further relief the Court deems just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues

          **BROOKE M. BARNETT & ASSOCIATES, P.C.**
          Attorneys for Plaintiff

          _____
          JARED J. MAZZEI, ESQ.

Dated: March 17, 2015